**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

CHAD MICHAEL NEWELL,

      Defendant.

No. 25-cr-2029-LTS

**REPORT AND RECOMMENDATION**

_____

## *I.    INTRODUCTION*

This matter involves a sister's quest to obtain firearms seized by the Government from her brother who was prohibited from possessing them.

Before the Court is a Third-Party Motion for Return of Property filed by Andrea J. Keys ("Petitioner"). (Doc. 46.) The Government filed a timely response. (Doc. 47.) Petitioner filed a reply. (Doc. 57.) On February 20, 2026, I held a hearing on the motion. (Doc. 60.) On February 23, 2026, I filed an order which states,

> [a]t the hearing, I ruled the Government could conduct discovery and I gave the parties sixty days to complete discovery (i.e. April 21, 2026). The parties have sixty days (i.e. April 21, 2026) to file any supplemental documentation they deem necessary for the Court's consideration of the motion.

(Doc. 62.)

On April 21, 2026, the Government filed a Motion for Evidentiary Hearing and Brief in Support. (Doc. 64.) On May 21, 2026, I held an evidentiary hearing at which Petitioner personally appeared pro se and Brian Keogh appeared on behalf of the Government. (Doc. 66.)

1

At the hearing, Petitioner did not offer any evidence. The Government objected to the Court taking notice of the Exhibits Petitioner attached to her Motion. (Doc. 46.) Ultimately, I did not formally admit the Exhibits into evidence but received them subject to the objection.

The Government then called Petitioner to testify as described more particularly below. Finally, as I noted at the hearing, 18 United States Code Section 853(n)(5) requires the Court to consider relevant parts of the record in the underlying criminal case, "In addition to testimony and evidence presented at the hearing, the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture." The Government's resistance called attention to the Presentence Investigation Report (the "PSIR") prepared by the United States Probation Office. (Doc. 40.) Thus, without objection, I read into the record portions of the PSIR relevant to the ownership of the firearms in question.

## II.    FINDINGS OF FACT

Petitioner seeks possession of four firearms: an 45 pistol, an AK-47, an AR-15, and a shotgun ("the Firearms.[1]") (Keys's Hr'g Test at 3.) As mentioned above, the Court must "consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture." 18 U.S.C. § 853(n)(5). The part of the criminal case I found most relevant, I read into the record from the PSIR as follows:

> So, under the offense conduct, paragraph 6, said that on November 30, 2024, Crime Stoppers of Central Iowa received a tip that defendant, a felon, possessed over 12 firearms that were registered to the defendant's mother but in the defendant's possession.
>
> Paragraph 11 states on February 11, 2025, the defendant participated in a post-*Miranda* interview and advised that at about six years prior he told [a person] with the [.]380 caliber firearm for protection. The defendant denied

---

[1] These four guns will be referred to as "the Firearms" to distinguish them from other "firearms" that are referenced but not the subject of this dispute.

being in possession of any firearms, stating that he got rid of all his firearms, including the firearms he had gotten from his late father due to his conviction related to domestic violence. When confronted about the firearms located in the motor vehicle in his garage, the defendant initially stated the firearms belonged to his father before admitting the firearms were his, and that he inherited them from his father. The defendant admitted that a year prior he put the firearms in the trunk of the motor vehicle and denied touching the firearms since.

Paragraph 13 states on April 16, 2025, Mary Newell, the defendant's mother, participated in an interview with law enforcement. Newell advised that prior to her late husband Bruce Newell's death in 2018, he had a large firearm collection. Newell advised that prior to Bruce's death, Bruce gave some of his firearms to the defendant.

Newell had not observed the defendant with any firearms since the defendant had been charged with a domestic violence offense. Newell noted that her husband used to fix motor vehicles in the garage at the defendant's residence and that any firearms located in the motor vehicle in that garage would have originally belonged to her late husband.

(Hr'g Tr. at 14-15.)

Petitioner does not "own" the Firearms; i.e., they are not in her name. (Keys's Test. at 4.) Petitioner has never had physical possession of the Firearms. (*Id.*) Petitioner had seen the Firearms in the safe of her mother's home. (*Id.* at 7.) Petitioner has no idea how or when the Firearms ended up in Defendant's possession. (*Id.* at 10.)

Petitioner's father, Bruce Newell ("Bruce") died in June of 2018. (*Id.* at 8.) Petitioner's father did not give the Firearms to Petitioner before his death and never discussed giving them to her. (*Id.* at 9.) Bruce did give her some other firearms. (*Id.*)

### III. THE PARTIES' POSITIONS

I cannot find the following allegations to be facts because Petitioner did not adduce any evidence at the hearing to prove them at the hearing. Nevertheless, I mention them here because (1) they help make sense of Plaintiff's allegation; and (2) they do not change

3

my recommendation.  Petitioner first alleged her late father and her grandfather owned the Firearms and that she "lawfully inherited the firearms" following their deaths.  (Doc. 46 at 3.)  Petitioner's motion includes, *inter alia*, an "Affidavit of Heirship" wherein she claims she became the rightful heir of the Firearms.  (*Id.* at 14.)  She also supplied Bruce's death certificate, a part of his Last Will and Testament, and his obituary (*Id.* at 17-20.)

In reply to the Government's response seeking to dismiss the claim (Doc. 47), Petitioner asserts that Petitioner's mother, Mary S. Newell ("Mary"), inherited the firearms and then transferred them to Petitioner.  (Doc. 57.)  This response purports to be supported by an "Affidavit of Ownership and Transfer."  (*Id.* at 4.)  This affidavit alleges the Mary "gifted and transferred the firearms" to Petitioner "prior to the seizure of the firearms by law enforcement."  (*Id.*)

In its Response to Sealed Pro Se Motion for Return of Property (Doc. 47), the Government contended that Petitioner had not established standing to challenge the forfeiture.  The Government's principal argument was that Petitioner's filings showed that the Firearms passed to Mary and not Petitioner as residue of Bruce's estate.  (Doc. 47 at 2.)  In its Memorandum in Support of Evidentiary Hearing, the Government argues that the title to the Firearms vested in the United States at the time of Defendant's criminal act.  (Doc. 64-1 at 3.)  The Government argues that as a third-party claimant, Petitioner is obligated to establish her legal interest in the Firearms under Iowa law, i.e., the jurisdiction that created the property right.  (*Id.*)  The Government asserts that Petitioner will be unable to establish a valid interest in the Firearms, much less show that she had priority over Defendant's interest.

The Government also points to an inconsistency in Petitioner's claim, to wit: Petitioner first claimed that she inherited the Firearms from Bruce and later that the

4

Firearms were a gift from Mary who had inherited them from Bruce. (*Compare* Doc. 46 and 57.)

## IV.    ANALYSIS

Petitioner does not claim any flaw exists in the procedure by which the Firearms were declared forfeited. Thus, the Court can proceed to a determination of whether Petitioner has established grounds to amend the order of forfeiture in her favor. *United States v. Timley*, 507 F.3d 1125 (8th Cir. 2007) discusses the requisite showing a petitioner must make:

> Twenty-one United States Code § 853 addresses criminal forfeitures. 21 U.S.C. § 853. Under § 853, any person convicted of a drug-law violation punishable by more than one-year imprisonment shall forfeit to the United States, irrespective of any provision of state law, "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of [the] violation." *Id*. § 853(a)(1).
>
> Section 853 also articulates procedures by which third parties may assert their interest in forfeited property. Indeed, a third party may petition a federal district court to adjudicate the validity of his purported interest in such property. *Id*. § 853(n). Specifically, "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." *Id*. § 853(n)(2) (emphasis added). Additionally, Federal Rule of Criminal Procedure 32.2 includes a similar provision mandating that a district court conduct an ancillary proceeding when a third party files a petition asserting an interest in property forfeited as the proceeds of criminal activity. Fed.R.Crim.P. 32.2(c)(1). The specifications that a third-party claimant have a legal interest (under § 853) and an interest (under Rule 32.2) impose a statutory-standing requirement on claimants. Thus, under both § 853 and Rule 32.2, "a party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate [a legal] interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture." *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars* ($364,960.00) in U.S. Currency, 661 F.2d 319, 326 (5th Cir. 1981).

Standing in forfeiture cases has "both constitutional and statutory aspects." *United States v. One–Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 40 (1st Cir. 2003). As to constitutional standing, "[i]t is well established that a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture." *Id*. at 41.

Regarding statutory standing, a plaintiff must have a legal interest. "Legal interest" is not defined within § 853. Facing a similar situation, the Supreme Court held that where the term "interest" is not specifically defined in a statute, it is assumed that the legislature's purpose is expressed by the ordinary meaning of the words used in the statute. *See Russello v. United States*, 464 U.S. 16, 21, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). To ascertain the ordinary meaning of "interest," the *Russello* Court turned to Black's Law Dictionary, which defines "interest" as "'[t]he most general term that can be employed to denote a right, claim, title or legal share in something.'" *Id*. (quoting Black's Law Dictionary 729 (5th ed. 1979)).

As § 853 does not define "legal interest," it should be given its ordinary meaning. Thus, we turn to Black's Law Dictionary, which defines a "legal interest" as "an interest that has its origin in the principles, standards, and rules developed by courts of law as opposed to courts of chancery." Black's Law Dictionary 829 (8th ed. 2004). Therefore, the term "legal interest" encompasses only legally protected rights, not equitable rights.

Because a legal interest is required to bring a claim under 21 U.S.C. § 853(n)(2), a court must first look to the law of the jurisdiction that created the property right to determine whether the claimant has a valid interest. *United States v. One Lincoln Navigator 1998,* 328 F.3d 1011, 1013 (8th Cir. 2003). If, for example, the property right arises under state law, a federal court will first look to state law to see what interest the claimant has in the property. If the claimant has no interest under state law, the inquiry ends, and the claim fails for lack of standing.

If a court determines the claimant has an interest in the property under the law of the jurisdiction that created the property right, then at the ancillary

hearing, it must next look to federal law, *i.e.,* to 21 U.S.C. § 853(n)(6), to determine if the claimant will prevail in the ancillary proceeding.[2]

*Id*. at 1129-30. Thus, Petitioner must first establish she has a legal interest in the Firearms and then show that she had priority of ownership as against Defendant at the time of his offense.[3] Title 21 United States Code § 853(n) contains the following relevant provisions that detail how a third party may establish rights in forfeited property:

**(n) Third party interests**

. . .

**(2)** Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

---

[2] *Timley* included the following footnote:

Many courts have conflated § 853(n)(2) with § 853(n)(6). This is incorrect, as § 853(n)(6), by its language "after the hearing," assumes that a claimant has standing to petition for an ancillary hearing. A more accurate reading treats § 853(n)(2) as requiring an initial showing of a "legal interest" to obtain an ancillary hearing and § 853(n)(6) as requiring a showing of a "superior legal interest" to prevail at the hearing. This difference is not pedantic, but essential to determining a court's power to conduct an ancillary hearing. *See, e.g., United States v. Premises Known as 7725 Unity Ave. N., Brooklyn Park*, Minn., 294 F.3d 954, 957 (8th Cir. 2002) (stating "[the plaintiff] need not prove its interest is superior to the [g]overnment's interest to have a stake in the outcome of the forfeiture proceedings").

507 F.3d at 1130, n. 2.

[3] There is no allegation that Petitioner subsequently acquired the property as a bona fide purchaser.

7

**(3)** The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

**(4)** The hearing on the petition shall, to the extent practicable and consistent with the interests of justice, be held within thirty days of the filing of the petition. The court may consolidate the hearing on the petition with a hearing on any other petition filed by a person other than the defendant under this subsection.

**(5)** At the hearing, the petitioner may testify and present evidence and witnesses on his own behalf, and cross-examine witnesses who appear at the hearing.  The United States may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses who appear at the hearing. In addition to testimony and evidence presented at the hearing, the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture.

**(6)** If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

    **(A)** the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

    **(B)** the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853. Pursuant Section 853(n)(6) to Petitioner must establish her right to the property by a preponderance of the evidence.

The Court could decide the matter before it merely on Petitioner's failure to present any evidence at the hearing. A petitioner is expressly authorized to testify and present evidence at a hearing on motion such as the one before the Court. *Id.* at § 853(b)(5).

Subject to the Government's objection, I took notice of Petitioner's exhibits to her motion at the hearing. I also took notice of portions of Defendant's Presentence Investigation Report pertaining to the Firearms as detailed above. Even considering this additional information, I recommend the Court conclude that Petitioner has not met her burden.

It appears the Firearms were at some point the personal property of Bruce, or perhaps Petitioner's late grandfather. Bruce seems to have made certain *inter vivos* gifts of some firearms to Petitioner, but not the Firearms in question. Petitioner admitted that Bruce may have also given some unspecified firearms to Defendant when Bruce was divesting himself of his firearms to various family members. (Keys's Hr'g Test. at 12.) The fact that Bruce was giving his firearms to Petitioner and other family members is at least consistent with the conclusion that Defendant and not Petitioner was Bruce's intended recipient of the Firearms. In other words, Petitioner knows that she did not receive the Firearms from Bruce. She does not know whether Defendant did, in fact, receive them from Bruce. Ultimately, however, the evidence does not establish that Petitioner received the Firearms in question from Bruce. Moreover, the Last Will and Testament – or at least the portion of it attached to the Motion – indicates that Mary was the recipient of the residue of Bruce's estate and makes no mention of bequeathing the Firearms to Petitioner.

9

Petitioner's current theory is that Mary inherited the Firearms from Bruce, and that Mary made that an *inter vivos* gift of the Firearms to Petitioner. Here again, Petitioner failed to adduce any evidence to support her allegations. The additional information that I took notice of in the Presentence Investigation Report, the exhibits to Petitioner's motion, and the testimony adduced at the hearing does not establish Mary gave the Firearms to Petitioner.

Bruce died in June 2018. Petitioner testified that she removed all firearms from Defendant's home (at least those she was aware of) after Defendant had a "domestic" in November 2018. (*Id.* at 8-10.) Petitioner testified, however, that she saw the Firearms in Mary's safe in 2021 when they made an inventory. (*Id.* at 11.) Petitioner testified that Mary had the only key to the safe in Mary's basement where firearms were stored. (*Id.* at 7.) Petitioner also testified:

> A. . . . [Bruce] gave me the firearms that he wanted me to have and gave the rest of the family the firearms that he had, that he wanted to give them, but he did not discuss that with me. And then when he passed away, my brother got a domestic and so that's when my mother signed them over to me. She said you might as well take them because he cannot have them.
> Q. Okay. When did that happen?
> A. He had a domestic November of 2018. And then -- yes, it was 2018.
> Q. So she said you may as well have them, but she never delivered those to you at any point?
> A. No, she said they were safe where they were at this point until I could get enough safes to put them at my house, and then they were -- so they were safe.
> Q. Did she put that in writing that she wanted you to have those?
> A. No, it was just a verbal between us in the living room. She did sign an affidavit saying that she gave them to me.
> Q. Well, she didn't sign this affidavit until this process was underway; is that fair to say?
> A. Fair to say. Until I -- yes.

(*Id.* at 9-10.)

The Iowa Court of Appeals has stated,

> A gift is made when the donor has a present intention to make a gift and divests himself "of all control and dominion over the subject of the gift." *In re Estate of Crabtree,* 550 N.W.2d 168, 170 (Iowa 1996). The transfer of dominion and control must be an actual, present transfer, not a future transfer. *Id.* The transfer must also be accompanied by donative intent, delivery, and acceptance. *In re Marriage of Liebich,* 547 N.W.2d 844, 851 (Iowa Ct. App. 1996). The intent of the grantor is the controlling element. *Id.* Although less positive proof is required to establish gifts between parent and child, delivery is still required. *Gartin v. Taylor,* 577 N.W.2d 410, 412 (Iowa 1998).

*McDonald v. Windus*, 728 N.W.2d 852 (Table) (Iowa Ct. App. 2007) (unpublished).

The facts do not support the existence of a completed gift of the Firearms from Mary to Petitioner. First, there was never an "actual, present transfer," as opposed to a possible "future transfer." Rather, at best, Mary seems to have kept the Firearms in a safe over which she maintained control and dominion. Petitioner concedes there was at least some future, contingent aspect of the purported gift, i.e., Petitioner did not have a safe to store the Firearms at the time they discussed the gift, and the gift was subject to Petitioner acquiring additional safes. There is no evidence that Petitioner obtained additional suitable storage facilities or that Mary waived this contingency before, during, or after Defendant obtained possession of the Firearms. Finally, Petitioner's contention that Mary kept possession of the Firearms (at least until Defendant obtained them) and Petitioner never received them, wholly undercuts the notion that there had ever been an actual, present transfer to Petitioner.

Because Mary was not called to testify, it is difficult to discern much about her intent without resorting to speculation. Nevertheless, Mary's purported statement that "you [Petitioner] might as well take them" accompanied by Mary's conclusion that "they [are] safe where they are" is not a particularly strong indication of an intention to make a present transfer of the Firearms. Nor, for that matter, is the fact that Defendant later

11

ended up in possession of the Firearms (somehow removed from the safe which Mary controlled) indicative of Mary's supposed intent to transfer the Firearms to Petitioner. There is no evidence that Mary ever reported the Firearms as stolen or missing, or even that Mary was somehow surprised by Defendant's possession of them. On the contrary, Mary's statement in the Presentence Investigation Report is, if not wholly contradictory to Petitioner's position, at least consistent with the conclusion that the Firearms were given to Defendant by Bruce *or*, at least, that Mary did not claim they were her property:

> Newell advised that prior to her late husband Bruce Newell's death in 2018, he had a large firearm collection. Newell advised that prior to Bruce's death, Bruce gave some of his firearms to the defendant. Newell had not observed the defendant with any firearms since the defendant had been charged with a domestic violence offense. Newell noted that her husband used to fix motor vehicles in the garage at the defendant's residence and that any firearms located in the motor vehicle in that garage would have originally belonged to her late husband.

(Doc. 40 at 5.)

Because Petitioner has not established either that she inherited the Firearms or received them by an *inter vivos* gift, she has failed to establish she had a legal interest in them. Thus, the Court should conclude she has no standing to seek amendment to the Court's order of forfeiture. Even if she had such standing, for the reasons set forth above, nothing about the record establishes she had priority of ownership at the time of Defendant's offense. Defendant was obviously in possession of the Firearms from some date unknown to Petitioner under circumstances that show Petitioner's claim to the Firearms is, at best, nebulous. Petitioner has not met her burden of showing either a cognizable interest in the Firearms or her priority over Defendant's interest in them at the time of the seizure.

12

## V.      CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** Petitioner's Third-Party Motion for Return of Property (Doc. 46).

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Crim. P. 59.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir.  2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 29th day of May, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa

13